IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| ESTHER NJOROGE, ET AL., | * | |
| Plaintiffs, | * | |
| v. | * | Civil No. 22-0425-BAH |
| PRIMACARE PARTNERS, LLC, ET AL., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This action[1] was brought by Plaintiffs Esther Njoroge ("Njoroge"), Jecinta Maina ("Maina"), Joyce Stubbs ("Stubbs"), and Ebun Olajide ("Olajide") (collectively "Plaintiffs") who allege violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq* ("FLSA" or "the Act"), and related state labor laws, against their former employer, PrimaCare Partners, LLC, d/b/a Visiting Angels of Baltimore East (hereinafter "PrimaCare Partners") and PrimaCare Partners' sole owner, Gina D. Negri (collectively "Defendants"). Before the Court is Plaintiffs' Motion for Conditional Certification and to Facilitate Notice Under the FLSA (hereinafter "Plaintiffs' Motion"). ECF 34. Defendants filed a Response in Opposition to Plaintiffs' Motion (hereinafter "Defendants' Opposition"). ECF 35. Plaintiffs filed a reply (hereinafter "Plaintiffs' Reply"). ECF 38. Plaintiffs' Motion included a memorandum of law and exhibits, Defendants' Opposition included exhibits, and Plaintiffs' Reply included exhibits.[2] The Court has reviewed all relevant filings, including Plaintiffs' Motion, Defendants' Opposition, Plaintiffs' Reply, and all attached

---

[1] This case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. 636(c) and Local Rule 301.4.

[2] The Court references all filings by their respective ECF numbers.

exhibits, and finds that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2021).  Accordingly, for the reasons stated below, Plaintiffs' Motion is **GRANTED IN PART**.  Specifically, the Court will conditionally certify an FLSA collective action pursuant to 29 U.S.C. § 216(b) and finds that court-facilitated notice to putative class members is appropriate.  The Court generally approves the notice provided by Plaintiffs as well as the suggested means of its dissemination.  The Court declines, however, to order Defendants to post the notice at PrimaCare Partners' central office.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are alleged by Plaintiffs in their complaint, sworn declarations, and accompanying exhibits.[3]  PrimaCare Partners is a franchise of Visiting Angels, a company that provides in-home care for elderly clients in need of assistance.  ECF 1 ¶ 7; ECF 34-6 ¶ 3.  Plaintiffs were all employed by Defendants as caregivers, some as hourly employees and some as live-in caregivers.  *See* ECF 34-3 ¶¶ 1–2, 14 (hourly and live-in); ECF 34-4 ¶¶ 1–2, 14 (live-in); ECF 34-5 ¶¶ 1, 7 (live-in); ECF 34-6 ¶¶ 1–2, 14–16 (live-in).  All Plaintiffs allege that they were required to work more than 40 hours per week without overtime pay and that they were not paid minimum wage as live-in caregivers.  ECF 1 ¶¶ 22–30, 60–61.  Some caregivers worked hourly shifts at a rate of $13.50 to $15 per hour.  ECF 34-3, ¶ 7.  Live-in caregivers worked 24-hour shifts for multiple days in a row and were paid a flat day rate between $140 and $155 per day.  ECF 34-3 ¶¶ 5, 11; ECF 34-4 ¶¶ 14, 23–24; ECF 34-5 ¶¶ 7, 13; ECF 34-6 ¶¶ 14, 19–21.

Defendant Negri interviewed and hired Plaintiffs.  ECF 1 ¶¶ 13–14; ECF 11 ¶¶ 13–14.  Njoroge was employed by Defendants between March 2018 and January 28, 2022, as a live-in

---

[3] In deciding motions for conditional certification under the FLSA, courts regularly rely on affidavits, declarations, and other evidence beyond mere allegations in the complaint to determine whether plaintiffs have alleged sufficient facts to justify proceeding as a collective action.  *See Baylor v. Homefix Custom Remodeling Corp.*, 443 F. Supp. 3d 598, 605–06 (D. Md. 2020); *Williams v. Long*, 585 F. Supp. 2d 679, 684–85 (D. Md. 2008).

caregiver. ECF 34-6 ¶¶ 1–2, 14–16. Maina was employed by Defendants between 2016 and February 7, 2022, as a live-in caregiver. ECF 34-4 ¶¶ 1–2, 14. Olajide was employed by Defendants between June 2014 and December 6, 2021, as a live-in caregiver. ECF 34-5 ¶¶ 1, 7. Stubbs was employed by Defendants between 2015 and August 2021 as both a live-in caregiver and an hourly caregiver. ECF 34-3 ¶¶ 1, 4.

In addition to being PrimaCare Partners' sole owner, Defendant Negri was Plaintiffs' supervisor. ECF 1 ¶¶ 11–12; ECF 11 ¶¶ 11–12. Defendant Negri assigned clients to Plaintiffs, set Plaintiffs' schedules, and set Plaintiffs' wages. ECF 34-3 ¶ 32; ECF 34-4 ¶¶ 7–8; ECF 34-5 ¶ 5; ECF 34-6 ¶¶ 8–9. Plaintiffs were often assigned to specific clients, whom Plaintiffs would assist for extended periods of time. ECF 34-4 ¶ 17; ECF 34-5 ¶ 5. Live-in caregivers worked multiple 24-hour shifts in a row in these clients' homes, eating and sleeping there. ECF 34-3 ¶¶ 11–14; ECF 34-4 ¶ 14; ECF 34-5 ¶ 7; ECF 34-5 ¶¶ 14, 24–25. At Defendants' direction, both hourly and live-in caregivers called an automated line to clock in and out before and after their shifts (whether days-long or hours-long). ECF 34-3 ¶ 23; ECF 34-4 ¶¶ 24–26, 33; ECF 34-5 ¶¶ 10, 18; ECF 34-6 ¶¶ 23, 32; ECF 38-3, at 3.

The duties of hourly and live-in caregivers were the same: assisting clients with "activities of daily living," including "assisting with bathing, washing dishes, helping with ambulation, preparing food, dressing the client, brushing hair, doing laundry, cleaning the house," as well as "providing basic, limited medical services such as giving medications, wound care, and turning and repositioning the clients." ECF 34-3 ¶ 10; *see also* ECF 34-4 ¶¶ 12–13; ECF 34-5 ¶ 12; ECF 34-6 ¶¶ 12–13; ECF 38-4, at 4; ECF 38-5. Plaintiffs, as live-in caregivers, report regularly not sleeping for five consecutive uninterrupted hours per night because they were required to, and did, wake up to care for their clients. ECF 34-3 ¶ 15; ECF 34-4 ¶ 29; ECF 34-5 ¶ 14; ECF 34-6 ¶ 27.

Plaintiffs allege that Defendants "did not ever inquire about or keep records" regarding the actual hours Plaintiffs worked during their 24-hour shifts, including times Plaintiffs worked through the night instead of slept, despite knowing that clients would require help in the night. ECF 34-3 ¶ 17; ECF 34-4 ¶ 31; ECF 34-5 ¶¶ 15–16; ECF 34-6 ¶¶ 29–30. Plaintiffs assert that Defendants had a policy of not paying minimum wage to live-in caregivers and not paying overtime to both live-in and hourly caregivers. ECF 34-3 ¶¶ 27–29; ECF 34-4 ¶¶ 36–40; ECF 34-5 ¶¶ 19–23; ECF 34-6 ¶¶ 35–39.

In June of 2020, several caregivers employed by Defendants, including Plaintiff Olajide and Plaintiff Maina, filed complaints with the U.S. Department of Labor ("DOL") claiming that Defendants' actions were unlawful. ECF 34-1, at 3. On September 20, 2021, the DOL released its "Fair Labor Standards Act (FLSA) Office Audit Narrative Report" (hereinafter "DOL Report") regarding PrimaCare Partners. ECF 34-7. The DOL Report found that, between June 26, 2019, and June 25, 2021,[4] PrimaCare Partners committed numerous FLSA violations, including minimum wage violations, overtime violations, and recordkeeping violations. ECF 34-7, at 4–6. The DOL Report found that live-in caregivers have "no set schedule" and "[t]here is no expressed agreement to limit working hours," so, because they are paid a fixed daily rate, "their regular rate drops below minimum wage." ECF 34-7, at 5. Live-in caregivers' pay stubs and payroll records show "days worked, not hours worked," in violation of the FLSA's recordkeeping requirements. ECF 34-7, at 6. Regarding the overtime violations, the DOL Report found that "[L]ive-in workers regularly work more than 40 hours per week and are paid a set lump-sum amount. No overtime is paid. Furthermore, . . . the company has a policy of paying overtime only after 48 hours per week

---

[4] The cover page of the DOL Report indicates that the investigation occurred from July 1, 2019, through July 1, 2021. ECF 34-7, at 1. The DOL Report itself lists the dates as June 26, 2019, and June 25, 2021. ECF 34-7, at 5.

[to hourly caregivers]." ECF 34-7, at 5.  The DOL Report concluded that $22,538.93 was owed to hourly caregivers in back wages, and $215,899.52 was owed to live-in caregivers.  ECF 34-7, at 6.  An addendum on November 19, 2021, indicated that Defendants "did not agree to pay nor agree to comply by [the] deadline."[5]  ECF 34-7, at 8.

Plaintiffs filed their complaint on February 21, 2022.  ECF 1.  Plaintiffs assert claims under the Maryland Wage and Hour Law for both minimum wage violations (Count I) and overtime violations (Count II), under the Maryland Wage Payment and Collection Law for failure to timely pay all wages due (Count III), and under the FLSA for minimum wage violations (Count IV) and overtime violations (Count V).  ECF 1, at 10–14.  Defendants answered the complaint.  ECF 11.  Plaintiffs now move the Court to conditionally certify the two FLSA claims as a collective action and to facilitate notice to potential plaintiffs.  ECF 34.  In support of the Motion, Plaintiffs have attached the following: declarations of the four party plaintiffs, including pay stubs (ECF 34-3; ECF 34-4; ECF 34-5; ECF 34-6) and a DOL Report noted above purporting to catalogue alleged FLSA violations by Defendants (ECF 34-7).  Plaintiffs submit more evidence in their reply including the following: Defendants' responses to a request for admissions and interrogatories (ECF 38-1; ECF 38-2); Defendants' employee handbook (ECF 38-3); Defendants' orientation materials (ECF 38-4); Defendants' job description for the "Home Care Aid/Caregiver" position (ECF 38-5); and what appear to be Defendants' payroll records (ECF 38-6).  Defendants submitted a declaration by Defendant Negri (ECF 35-2) to support their position.

Plaintiffs propose conditional certification of, and notice to, the following class of potential plaintiffs: "All current and former in-home caregiver employees who regularly worked 24-hour

---

[5] The DOL Report does not contain a description of the deadline, so the Court is unclear as to what it refers specifically.

shifts and/or who worked more than 40 hours per week for Defendants [PrimaCare Partners, LLC, d/b/a Visiting Angels of Baltimore East and Gina D. Negri] from February 22, 2019 to present." ECF 34-1, at 16.

## II.     **LEGAL STANDARD**

Under the FLSA, employees alleging violations of the Act may bring an action against an employer "on behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). The FLSA "establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit." *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 771 (D. Md. 2008) (citing *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000)). Any "similarly situated" employees must affirmatively opt in to become a party plaintiff. *Simmons v. United Mortg. & Loan Inv., LLC*, 634. F.3d 754, 758 (4th Cir. 2011); *Marroquin v. Canales*, 236 F.R.D. 257, 259 (D. Md. 2006). District courts have discretion to certify an FLSA action as a collective action to facilitate notice to other potential class members. *Blake v. Broadway Servs. Inc.*, No. CCB-18-086, 2018 WL 4374915, at *2 (D. Md. Sept. 13, 2018) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)). And "[d]espite sharing a similar legal standard, the 'opt-in' process and certification of a collective action under the FLSA are distinct procedural mechanisms." *Id.* "Certification, in the FLSA context, is merely the trial court's exercise of discretionary power to notify potential class members." *Id.* (citing *Hoffmann-La Roche Inc.,* 493 U.S. at 169).

In the Fourth Circuit, this collective action mechanism generally progresses in two stages, including an initial stage, typically referred to as the "notice stage" and a later "decertification stage" that requires a more stringent inquiry. *Mazariegos v. Pan 4 America, LLC*, No. DLB-20-2275, 2021 WL 5015751, at *2 (D. Md. Oct. 28, 2021) (collecting cases). At the first stage, the Court determines whether the plaintiffs have made a sufficient showing that other potential

plaintiffs are similarly situated enough to warrant proceeding conditionally as a collective action. *Camper*, 200 F.R.D. at 519. This stage generally occurs before discovery, so the threshold for determining whether other plaintiffs are similarly situated is necessarily low. *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012) (citing *Marroquin*, 236 F.R.D. at 259); *Mazariegos*, 2021 WL 5015751, at *3 (citing *Lancaster v. FQSR*, No. TDC-19-2632, 2020 WL 5500227, at *2–3 (D. Md. Sept. 11, 2020)). A "group of potential FLSA plaintiffs is 'similarly situated' if its members can demonstrate that they were victims of a common policy, scheme, or plan that violated the law." *Butler*, 876 F. Supp. 2d at 566. Though this factual showing is "relatively modest," *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995), plaintiffs must assert more than just "vague allegations." *Lancaster*, 2020 WL 5500227, at *2–3. Rather, they must "rely on 'affidavits or other means' to make the required showing." *Baylor v. Homefix Custom Remodeling Corp.*, 443 F. Supp. 3d 598, 605 (D. Md. 2020) (quoting *Williams v. Long*, 585 F. Supp. 2d 679, 683 (D. Md. 2008)). After the Court conditionally certifies a collective action, the Court helps facilitate notice to potential class members, who then can choose whether to opt in. *Syrja v. Westat*, 756 F. Supp. 2d 682, 686 (D. Md. 2010); *Camper*, 200 F.R.D. at 519 (citing *Hoffman-La Roche Inc.*, 493 U.S. at 169).

At the second stage, generally undertaken after discovery has concluded, a defendant may move for decertification. *Syrja*, 756 F. Supp. 2d at 686. Then, the Court again considers whether the plaintiffs are actually similarly situated to warrant continuing the action collectively, but the inquiry at this second stage is "more stringent." *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007); *see also Syrja*, 756 F. Supp. 2d at 686. Because Plaintiffs have met the less stringent notice stage standard of showing that they and other potential plaintiffs are similarly situated, the Court will grant Plaintiffs' Motion for Conditional Certification. The Court

will also grant in part Plaintiffs' Motion to Facilitate Notice, albeit not in the precise manner requested by Plaintiffs. The Court elaborates below.

## III. ANALYSIS

As noted above, the standard for conditional certification of a collective action is a lenient one. The Court need only determine that the plaintiffs and potential plaintiffs "were the victims of a common scheme, policy, or plan that violated the law." *Baylor*, 443 F. Supp. 3d at 607 (citing *Butler*, 876 F. Supp. 2d at 566). Plaintiffs do not need to show that all current and potential plaintiffs' claims be identical. *Id.* at 605 (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001)). Rather, "[a]ll that is required at the initial certification stage is some evidence of 'a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions.'" *Mazariegos*, 2021 WL 5015751, at *3 (quoting *Blake*, 2018 WL 4374915, at *3). Because Plaintiffs here have shown that they and other potential plaintiffs are similarly situated, conditional certification is proper, and the Court has the discretion to facilitate notice to potential plaintiffs.

### A. Plaintiffs Have Made the Threshold Showing that Plaintiffs and Other Potential Plaintiffs Are Similarly Situated to Warrant Conditional Certification as a Collective Action Under the FLSA.

Plaintiffs here request this Court to approve notice to be sent to "[a]ll current and former in-home caregiver employees who regularly worked 24-hour shifts and/or who worked more than 40 hours per week for Defendants from February 22, 2019 to present." ECF 34-1, at 16. Plaintiffs base their proposed class on a notice approved in *Geiger v. H.H. Franchising Sys., Inc.*, No. 3:17-cv-00738-FDW-DSC, 2018 WL 10689465, at *2 (W.D.N.C. Nov. 27, 2018) (approving notice to be sent to the following class: "All current and former in-home caregiver employees who regularly

worked 24-hour shifts and/or who worked more than 40 hours per week, are/were employed by [Defendants] in North Carolina from December 24, 2014[,] to the present").[6]

Defendants argue that all current and potential plaintiffs here are not sufficiently similarly situated to warrant conditional certification because each plaintiff's claims are too individualistic. ECF 35, at 7. Defendants note that each plaintiff worked for different clients, at different locations, for different amounts of time, under different conditions, and were paid differently. ECF 35, at 7–12. Though there may exist some differences between current and potential plaintiffs, the Court finds that Plaintiffs have met their relatively lenient burden for conditional certification at this early stage of the case. At this stage, Plaintiffs have made the modest factual showing that there exists a similarly situated class of potential plaintiffs who were subject to a common policy, scheme, or plan that may have violated the law. *Marroquin*, 236 F.R.D. at 259–60.

Here, Plaintiffs and potential plaintiffs all were employed as caregivers, whether live-in, hourly, or both, by PrimaCare Partners. ECF 34-3 ¶¶ 1–2, 14; ECF 34-4 ¶¶ 1–2, 14; ECF 34-5 ¶¶ 1, 7; ECF 34-6 ¶¶ 1–2, 14–16. All performed the same basic duties: assisting elderly clients with daily household activities and performing limited medical care. ECF 34-3 ¶ 10; ECF 34-4 ¶¶ 12–13; ECF 34-5 ¶ 12; ECF 34-6 ¶¶ 12–13; ECF 38-4, at 4; ECF 38-5. Defendant Negri told them where to go and when. ECF 34-3 ¶ 32; ECF 34-4 ¶¶ 7–8; ECF 34-5 ¶ 5; ECF 34-6 ¶¶ 8–9. All plaintiffs and potential plaintiffs, regardless of classification as live-in or hourly, were required to clock in and out by calling the same automated phone number. ECF 34-3 ¶ 23; ECF 34-4 ¶¶ 24–

---

[6] Defendants point out that the court in *Geiger* declined to conditionally certify that FLSA case as a collective action. ECF 35, at 7. While it is true that the *Geiger* court did not formally approve collective certification, it nonetheless agreed that the distribution of notice to potential plaintiffs was appropriate. *See Geiger*, 2018 WL 10689465, at *1. Thus, the technical denial of conditional certification in *Geiger* was of little consequence as the *Geiger* plaintiffs received the same relief Plaintiffs seek here—the Court's approval of notice to potential plaintiffs that they can opt in to pending FLSA litigation.

26, 33; ECF 34-5 ¶¶ 10, 18; ECF 34-6 ¶¶ 23, 32; ECF 38-3, at 3.  All plaintiffs and potential plaintiffs were allegedly subject to the same policy of failure to pay overtime, and a subset of those plaintiffs were also subject to the policy of failure to pay minimum wage.  ECF 1 ¶¶ 60–61.  Thus, all members of the proposed class share "at least a manageably similar factual setting with respect to job requirements and pay provisions," *Blake*, 2018 WL 4374915, at *3, and common questions of law and liability predominate, *Mazariegos*, 2021 WL 5015751, at *3.

In opposing certification, Defendants rely primarily on *Syrja*, *Brianas v. Under Armour, Inc.*, No. RDB-17-02928, 2018 WL 2184448 (D. Md. May 11, 2018), and *Brown v. Rapid Response Delivery, Inc.*, No. RDB-16-1203, 2017 WL 55858 (D. Md. Jan. 4, 2017).  These cases are distinguishable.

In *Syrja*, this Court held that conditional certification was not appropriate in a case alleging overtime violations where field interviewers worked across multiple geographic locations with different managers, set their own schedules, had drastically different case assignments, did not keep timekeeping records, and where the party plaintiff failed to provide sufficient evidence of a national policy regarding the overtime violation.  756 F. Supp. 2d at 687–88.  The *Syrja* Court noted that "adjudication of the multiple claims in [that] case would require 'substantial individualized determinations for each class member,'" making conditional class certification impractical.  *Id.* at 686 (quoting *Purdham v. Fairfax Cnty. Pub. Schs.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009)).  In *Brown*, this Court held that conditional class certification was not appropriate where delivery drivers set their own schedules, where they were compensated based on distance traveled rather than time worked, and where there was no evidence of the hours each delivery driver worked.  *Brown*, 2017 WL 55858, at *3.

Both *Syrja* and *Brown* are distinguishable from the case at bar. Plaintiffs have provided ample evidence that all caregivers performed substantially the same tasks regardless of classification as live-in or hourly. ECF 34-3 ¶ 10; ECF 34-4 ¶¶ 12–13; ECF 34-5 ¶ 12; ECF 34-6 ¶¶ 12–13; ECF 38-4, at 4; ECF 38-5. Though all potential class members did work in different clients' homes, all potential class members' schedules were set by Defendant Negri, all were required to clock in and out in the same way as directed by Defendants, and Defendant Negri maintained control of their pay. ECF 34-3 ¶¶ 23, 32; ECF 34-4 ¶¶ 7–8, 24–26, 33; ECF 34-5 ¶¶ 5, 10, 18; ECF 34-6 ¶¶ 8–9, 23, 32; ECF 38-3, at 3; ECF 38-4; ECF 38-5. Additionally, Plaintiffs do not allege labor violations by their individual clients, nor did they work for different managers across different geographic areas. Rather, Plaintiffs have demonstrated that they all allegedly suffered from the same policy (of failing to pay minimum wage for live-in caregivers and failing to pay overtime to both live-in and hourly caregivers) implemented by the same person. *See* ECF 34-3 ¶¶ 27–29 (and accompanying paystubs); ECF 34-4 ¶¶ 36–40 (and accompanying paystubs); ECF 34-5 ¶¶ 19–23 (and accompanying paystubs); ECF 34-6 ¶ 35–39 (and accompanying paystubs). Therefore, the Court declines to follow *Syrja* and *Brown* here.

*Brianas* is also distinguishable. In that case, conditional certification was improper where the party plaintiff, an analyst, relied only on his complaint and declaration to support his "conclusory" assertion that other analysts regularly worked overtime and where the defendant employer submitted three additional declarations from other analysts denying the same. *Brianas*, 2018 WL 2184448, at *4. The instant case suffers no such lack of evidence, where Plaintiffs have submitted four declarations including pay stubs (ECF 34-3; ECF 34-4; ECF 34-5; ECF 34-6), a DOL Report cataloguing alleged FLSA violations by Defendants (ECF 34-7), Defendants' responses to a request for admissions and interrogatories (ECF 38-1; ECF 38-2); Defendants'

employee handbook (ECF 38-3); Defendants' orientation materials (ECF 38-4); Defendants' job description for the "Home Care Aid/Caregiver" position (ECF 38-5); and payroll records (ECF 38-6). This evidence is enough to meet Plaintiffs' minimal burden of establishing that they and potential plaintiffs are sufficiently "similarly situated" under § 216(b).

Contrary to Defendants' argument, a collective action conditional certification does not fail when some degree of factual inquiry is required for each individual potential plaintiff. "[A] collective action does not 'prohibit individualized inquiry in connection with fashioning the specific relief or damages to be awarded to each class member.' . . . 'Testimony regarding dates, hours and pay rate does not affect certification of the collective action . . . .'" *Randolph v. PowerComm Const., Inc.*, 309 F.R.D. 349, 369 (D. Md. 2015) (quoting *LaFleur v. Dollar Tree Stores, Inc.*, 30 F. Supp. 3d 463, 474–75 (E.D. Va. 2014)).

As noted, the inquiry at this stage focuses on whether all potential plaintiffs were subjected to the same improper *policy*, not whether the facts of each plaintiff's claims are identical. *See Baylor*, 443 F. Supp. 3d at 605. Where the Court has denied conditional certification to a class whose members worked at different sites, the concern was that employees were subject to different policies across sites. *See Syrja*, 756 F. Supp. 2d at 688. Here, by contrast, though members of the proposed class all worked in different locations at different clients' homes, the question of Defendants' liability is the same across the class because class members remained subject to the same allegedly improper policy (failure to pay overtime and/or minimum wage) controlled and implemented exclusively by Defendants. The fact that Plaintiffs and potential plaintiffs had different schedules and clients is not fatal to conditional class certification—the key inquiry is the degree to which Plaintiffs' schedules and responsibilities were under Defendants' control. *See Baylor*, 443 F. Supp. 3d at 606 (finding that plaintiffs there met the threshold showing where

plaintiffs "alleged significant control by Defendants over Plaintiffs' assignments, including . . . setting the schedules [and] determining the hours they must work").

Defendants also contend that the proposed class is overbroad since it includes both live-in caregivers, who may be entitled to "sleep-time," and hourly caregivers who are not. ECF 35, at 12–13. The fact that some members of the proposed class may have both minimum wage and overtime claims (live-in caregivers) and others may only have overtime claims (hourly caregivers) is not fatal to conditional certification. *See Rivera v. Mo's Fisherman Exchange, Inc.*, No. ELH-15-1427, 2018 WL 2020423, at *6 (D. Md. May 1, 2018) (citing *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010)). In *Rivera*, Judge Hollander conditionally certified an action where plaintiffs brought overlapping claims of unpaid overtime, illegally withheld tips, and unpaid straight wages. *Id.* at *6–7. Indeed, at the decertification stage, Judge Hollander determined that dividing the plaintiffs into subclasses based on FLSA claims would more easily facilitate resolution of the case, but such an action did not warrant decertification even under the more stringent standard. *Id.* at *7 (citing *Alvarez*, 605 F.3d at 449–50; *Rawls*, 22 F.R.D. at 302; Fed. R. Civ. P. 83). If overlapping claims are not enough to *decertify* a collective action, overlapping claims cannot be a sufficient basis for denying conditional certification at the initial notice stage where the burden is relatively lighter.

Thus, it is proper to conditionally certify the proposed class here whose members potentially have overlapping claims of minimum wage and overtime violations. Plaintiffs here have carried their modest burden to demonstrate that "[a]ll current and former in-home caregiver employees who regularly worked 24-hour shifts and/or who worked more than 40 hours per week for Defendants [PrimaCare Partners, LLC, d/b/a Visiting Angels of Baltimore East and Gina D.

Negri] from February 22, 2019 to present" are sufficiently similarly situated to warrant conditionally certifying this case as a collective action.

> **B.    The Court Will Facilitate Opt-In Notice to Potential Plaintiffs by U.S. Mail, Email, and Text Message.**

The question now shifts to the notice to be sent to putative class members. *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 710 (D.S.C. 2015). The notice cannot appear to constitute a court endorsement of Plaintiff's claim. *Id.* Plaintiffs request that notice be sent to potential plaintiffs via "(1) First-Class U.S. Mail; (2) email; (3) text message; and (4) posting in a conspicuous place at Defendants['] principal office." ECF 34-1, at 16. Plaintiffs request Defendants produce a list of all current and former employees that may fall into the conditional class. ECF 34-1, at 17. Further, Plaintiffs explain that "within seven days of Defendants producing a list of all putative class members, Plaintiffs' counsel will determine whether use of a third-party cases administrator is necessary or if Plaintiffs' counsel will handle sending the notices." *Id.* Then, if a case administrator is deemed necessary, "Plaintiffs' counsel propose the parties will agree upon a case administrator within 30 days of Defendants' production of the list of putative opt-in plaintiffs." *Id.* Plaintiffs suggest a 90-day notice period from "the date on which the notice and opt-in forms are mailed," with a "reminder notice [sent] 15 days before the expiration of the opt-in period." *Id.* at 16–17. Defendants oppose notification through text message as duplicative and the posted notice at Defendants' principal office as improper because members of the collective class do not work in a central location. ECF 35, at 13–14.

The Court will permit notice by text message in addition to U.S. mail and email. After all, sending notice both via U.S. mail and email is necessarily duplicative, so denying a method of notice on that basis alone is not proper. *See Sarahong v. Smartlink*, LLC, No. BPG-22-328, 2022 WL 2065930, at *3 (D. Md. June 8, 2022) (noting that sending notice through email and text

message has become increasingly common).  The Court permits the parties to determine the necessity of a case administrator in the manner Plaintiffs propose and authorizes the 90-day notice period proposed and the reminder notice fifteen days before the close of the notice period.  The Court approves the proposed notice and consent form provided at ECF 34-8, but Plaintiffs are directed to correct the typographical errors in the notice and consent form before sending them to potential plaintiffs.[7]

The Court agrees with Defendants regarding the posted notice at Defendants' principal office.  Thus, unless Plaintiffs show good cause for posting a notice at Defendants' principal office after diligently attempting to notify plaintiffs via the three other approved means, the Court will not require such notice to be posted.

Defendants are directed to provide to Plaintiffs, within fourteen (14) days of the accompanying Order, a paper copy and a computer-readable database including the following information to the extent it is in Defendants' possession: (1) the full names, (2) last known addresses, (3) last known phone numbers, (4) last known email addresses, (5) positions held, and (6) dates of employment for all those individuals who worked for Defendants as either live-in or hourly caregivers from February 22, 2019 to the present.

### IV.     CONCLUSION

For the reasons set forth above, Plaintiffs' Motion is GRANTED IN PART.  A separate Order will issue.

Dated: September 26, 2022

/s/
Brendan A. Hurson
United States Magistrate Judge

---

[7] For example, the name of the party plaintiff is misspelled on the first page of the notice ("*Njorogoe*" instead of "*Njoroge*"), the top bullet on the second page of the notice contains an extraneous "has," and the caption on both the notice and consent refers to the first defendant as "PRIMACARE PARTNERS LLL" rather than "PRIMACARE PARTNERS LLC."